Good morning, Your Honors. May it please the Court, I'm Kira Murray, appearing on behalf of the petitioner, Mr. Raja Akbar. The purported discrepancies underlying the Board and the IJ's adverse credibility finding are not supported by substantial evidence. The IJ held, and the BIA affirmed in a matter of Bourbon decision, that the petitioner was not credible for the following three reasons. The first reason for the adverse credibility finding were the alleged inconsistencies between Mr. Akbar's description of his memory of certain political events and the political events described in a State Department report that provided a small summary regarding the incident. The second reason for the adverse credibility finding was the fact that Mr. Akbar submitted affidavits from people back in Pakistan who did not provide information regarding Mr. Akbar's detention and torture. And finally, the third basis for the IJ's adverse credibility finding was the fact that Mr. Akbar explained in further detail the type of torture he was subjected to during his testimony that was not included in his original application for asylum. Now, before analyzing each of these three bases for the adverse credibility finding, it's important to note the language contained in the BIA decision specifically. In this case, the BIA did not merely affirm the IJ's decision, but also supplemented the decision with its own claim. The BIA's claim that the IJ's decision was based on a personal concern would lead us to conclude that the Respondent's story is untrue. However, the constellation of problems described by the IJ lead us to agree that the Respondent has not met his burden of proof to establish eligibility of removal. Thus, the BIA stated that no one factor alone in Mr. Akbar's case would be sufficient to make an effort. Now, let me ask you about that, because the BIA really didn't expressly affirm the adverse credibility finding. Isn't that true? I mean, they affirmed the IJ's decision. They affirmed the decision, but usually, you'd see we agree with the IJ's adverse credibility finding because those express findings have some meaning in immigration law. And I was just curious, because it seemed to me, and I could be wrong, that the BIA was more focused on the burden of proof as opposed to sustaining an adverse credibility finding, and those would be two different concepts. Well, I think that the fact that they focus on the veracity of Mr. Akbar's claims seemed to suggest that they did make an adverse credibility finding. Well, let's assume that they didn't. What's the significance of that, if any? Well, I think that... Since we review the BIA decision, we're just taking that. Let's say that there's no adverse credibility finding. What's the significance of that, if that's true? Well, then we would have to look to the IJ's reasoning for making their adverse credibility finding. Well, if it's a burden of proof issue, does that change our analysis, any? Well, no, because I believe that it was the veracity of the claims that led the BIA to find that he had not met his burden of proof, that that was the reason behind it. There's no other stated reason for such a decision, for such a conclusion. So I think that that really is, that goes to the heart of this matter. All right. So it's a bravado decision with a little embroidery? Yes. I would put it that way. So in analyzing these three reasons that the IJ focused on and that the BIA upheld and specifically stated that they were upholding, affirming the IJ's decision according to matter bravado, the first reason, the alleged inconsistencies between Mr. Akbar's description of certain political events and those contained in the State Department report. The first issue regarding this particular testimony relates to a gross misinterpretation and mistranslation that occurred. And that's evident from the record and was also briefed in Petitioner's reply brief. The IJ heavily relied on this particular aspect. And the interpreter actually misinterpreted Mr. Akbar's testimony and used the word dissolve or dismiss to describe what had happened to his particular party in the government. However, when it was brought up that, in fact, he was using the word split, the IJ still decided to rely on the word dissolve and dismiss in order to find that his description of events was not consistent with the State Department report. And, in fact, the word split would not be inconsistent at all with the State Department report. The State Department report says that Benazir Bhutto was elected in 1993 and then goes on to say that there was another election in 1996. It does not describe any of the factionalizations that may have occurred in the party internally, in the Pakistan People's Party. It also doesn't describe what was happening on a local level, only on the national level. And so his testimony is actually still consistent with the State Department report. Furthermore, the IJ never asked for any clarification as to whether or not he was talking about the national government or a local government or whether or not he was talking about some kind of ideological split that had occurred within the party and not some kind of literal split. Mr. Akbar testified that he knew that Benazir Bhutto was elected in 1993, and that's consistent with the State report. The second issue relating to this aspect of the testimony is that the record Actually, I addressed that already. So I'll go on to the second reason that the IJ made an adverse credibility finding, and that was that Mr. Akbar provided affidavits from people who did not provide information regarding Mr. Akbar's detention and torture. Firstly, case law has repeatedly held that an omission from an affidavit written thousands of miles away cannot serve as the basis for an adverse credibility finding, and that's in Osorio 99F3rd at 931. Secondly, there's absolutely no evidence in the record to suggest that these clients actually knew anything about Mr. Akbar's arrests and torture. So the fact that they don't mention it in their affidavit couldn't possibly be an omission. There's no record to suggest that they were precipient witnesses to the event, that they saw the torture injuries. Therefore, it's not an omission. They wrote about what they knew, which is that he was a staunch political activist, and that is all that they're required to write about. The third and final reason for the IJ's adverse credibility finding was the fact that Mr. Akbar explained in further detail the specific types of torture that he was subjected to during his testimony that was. Please. The affidavit, the affidavits don't corroborate the persecution. Isn't that the problem? They don't. They may not. They may not. They may be consistent to a degree, but they don't corroborate the persecution. Isn't that the problem? Right. But the IJ deems them to be omissions, that they actually omitted evidence. And there's no suggestion that they actually had that evidence, you know, that they had that knowledge. So it really can't be deemed as an omission. As far as corroboration, this is a pre-real ID case, and, you know, these affidavits served to corroborate certain aspects of the testimony. They can't be expected to corroborate every single aspect of Mr. Akbar's testimony. And so the final point, his elaboration and the further detail that he used to describe the torture, the case law explicitly states that a concern that the affidavit is not as complete as might be desired cannot, without more, properly serve as a basis for a finding of a lack of credibility. Clearly, the affidavit and the declaration were meant to be summaries of what happened to Mr. Akbar, and the fact that he actually provided more detail during the testimony upon questioning does not show that he was embellishing. He had stated that he was tortured at that time. He didn't invent an entirely new incident. He just described in more detail the actual injuries that he suffered. And because the BIA didn't merely affirm the IJ's decision and they say that no one thing alone can actually create an adverse credibility finding, we don't know which one and in which combination would serve to be sufficient. And lastly, the IJ also denied Mr. Akbar's application for relief under the Convention Against Torture, and the BIA affirmed this, and there is not one mention of country conditions evidence in either of their decisions. And based on that, we would ask that the CAT claim be remanded and that the credibility for finding be reversed. Thank you. May it please the Court. My name is Edward Wiggers. I represent the Respondent in this matter. Petitioner provided contradictory accounts of his own experiences and the events in Pakistan that led to all three agency adjudicators finding him incredible.    Petitioner's failure to present a credible and coherent claim is even more telling in light of his ample opportunity to prepare his claim while working with counsel prior to his hearing. The internal contradictions in Petitioner's testimony and its conflicts with the documents in the record are substantial evidence supporting the immigration judge's decision, and this Court should deny the petition for review. And as far as the contradictions, Petitioner first told his story to an asylum officer who adjudicated his asylum application. He did not know the correct name of his political party, and he changed his account of events regarding what he claimed to have occurred in 1993 and 1996 whenever he was confronted with the inconsistencies between what he was saying and what was in his application. At one point he's claiming he was beaten in 1996. Then he corrects his story to say that he was not. He said he was protesting. in 1996 when his application claimed that it was because of the second dissolution of the Bhutto government. And as far as his testimony, while Petitioner's arguing that it was consistent with the State Department reports, the details are most telling. Petitioner claimed in his testimony that Benazir Bhutto was elected the prime minister of Pakistan in October of 1993, but that he was arrested after protesting the dissolution of her government in September of 1993, which is in itself a temporal impossibility. And regarding the claims about a translation issue, there actually is none in the record. There is the, when the Petitioner's counsel in front of the immigration judge first identified his concern with the translator. The immigration judge addressed that issue. And in the course of subsequent testimony, Petitioner himself affirmed that he believed the word split also meant dissolved. The context of his testimony indicates that he was clearly talking about the dismissal of Benazir Bhutto as prime minister and the dissolution of her government. And finally, when... Well, he does at one point talk about how there are different party factions splitting. I read the same portion you did, and it was a little not as clear as I think maybe your interpretation is, at least to me. I mean, he talks about there's split, there's divide, and then later on he talks about factions. It was difficult for me to get a coherent picture from the testimony. Yes, Your Honor. He was talking, he was using the word split to refer to split or dissolve. And that was where all that came in. But as far as the factions were concerned, primarily he was testifying about the differences between Ms. Bhutto and the President at the time. And it wasn't so much internal difficulties within the party, but the crux of his testimony was that he had no reason to protest as long as she was in power and her government was in place. But once she was no longer in power, according to him, and her government was no longer in place, that was when he decided to protest. So it was clear from those comments that he was not talking about a simple split or party infighting. He was talking about a dissolution of the Bhutto government in 1993, which simply did not happen. Is it clear from the IJA's decision that that's the way he understood it? Yes, Your Honor. It's clear. In fact, in addition to the IJA's decision, towards the end of Petitioner's testimony, the immigration judge gets to the bottom of the issue with split versus dissolve. And there's a point where he asks the petitioner, what happened? And the petitioner says one word, which was translated as split. And the immigration judge then walks through with the interpreter, what word was that? What does it mean? And the interpreter explains that word means split, and that there's a different word that means dissolve. However, in the interpreter's experience, which she admitted was limited, most people in Pakistan use the word split to also mean dissolve. And twice, Petitioner himself testified that split and dissolve mean the same thing to him. And then an immigration judge is justifying in what language? Urdu, Your Honor. Urdu. And so he says split and dissolve. Did he use two different Urdu words? I just couldn't figure out how that. I don't believe he used two. He just said that means the same thing to me was his response to those questions. He said split and dissolve mean the same thing. So I imagine he used two different Urdu words. Well, he says when the parties split, did each group have a different name? And he goes on to say, well, PPP is a big party. And then he says, what is the name of your group? The People's Student Federation. Yes, Your Honor. So I take your point that, you know, you can read it one way, saying it talks about the dissolution of government. And then at different points in his testimony, he's talking about the party itself splitting into different groups. Your Honor, he was referencing the group that he was the secretary of, the subset of the Pakistan People's Party. But the word was split when the split occurred. And he says, yes, we had our separate group. I'm just saying that the word split and dissolve were not used synonymously throughout the testimony. I submit respectfully, Your Honor, that they are. He often had problems understanding the questions. They had to go back over points multiple times. And what would appear to be this discussion of various factions and they split is actually the communication difficulties between Petitioner and the various people who were questioning him. But the crux of his case was the claim that the Bhutto government was dissolved in 93, which simply did not happen. He also claimed that there was a Muslim party in control from 94 to 95, which did not happen, and that Ms. Bhutto was again elected in 95. There were no elections in 95. He had claimed that Ms. Bhutto was initially elected in approximately 1991 or 1992, which was not true. And while he knew the name of the founder of the party back in 1967 and the date of its founding, he did not know when the party leader was prime minister at a time when he claimed he was being abused by the police forces, which is significant in light of the State Department reports because the police forces in Pakistan tended to abuse members of political parties who were not in power at the time. So if his party is in power, it undercuts the entirety of his claims. And to get back to Judge Schroeder's question about, if I can get back to it, about the immigration judge's reliance, the first point he discussed was the massive discrepancy regarding 1993 to 1996 with Ms. Bhutto's standing. And to respond to the Court's inquiries of Petitioner's Counsel regarding the nature of review, as this is a matter of Bourbonnoe affirmance, this Court ordinarily reviews the immigration judge's decision as the final agency determination because the Board has adopted and affirmed that decision. Right. It did go on and give a different explanation, though. That's the – so we have to take that into consideration. Yes, Your Honor, but it did not modify the immigration judge's decision. No. And so that is what stands. No, but it couched it differently. That's why I asked the question. And it might – it cuts both ways. I mean, you could say if, in fact, it's – if they hadn't cited Bourbonnoe, you could say, well, there's no adverse credibility determination, therefore, you have to accept what he says is true, and then it's a burden of proof issue. So that would cut in favor of the Petitioner. However, then it cuts in favor of the government to say it didn't meet his burden of proof, which would say, well, we accept his testimony as relative – that he was honest in testifying, but it didn't satisfy the burden. So it seems to me it cuts both ways. Yes, Your Honor. Well, isn't the crux of the case that the immigration judge didn't believe the Petitioner? Yes, Your Honor. The crux is that – Burden of proof. Isn't it a burden of proof, as the judge was pointing out? Yes, Your Honor. Burden of proof. I think that's what his position was in the case, that the credibility was lacking. Yes, Your Honor. That's what I – as I see what the judge based his opinion on. Yes, Your Honor. The immigration judge and the board also. The board did add additional language in discussing how it felt about the underlying record. However, the immigration judge's decision is the final one, and it is an adverse credibility decision. The board didn't make an adverse credibility determination, but in its embroidery it did say it didn't find the Petitioner's case plausible. So I'm not sure what – Plausible or coherent. Yes, Your Honor. Right. Well, the unusual thing is that when – usually when you have a Bourbonno affirmance, it's just a straight Bourbonno affirmance. It's a one paragraph. We have case law that says if the BIA makes any additional findings, then we take the BIA decision as the final decision. We ignore the IJ. I don't think we've had a combination case like this that we've seen. So I think – I don't think we need to reach any of those issues in this case particularly, but I'm not confident that a mere Bourbonno affirmance followed by rationale would mean that the IJ decision is the only final decision we review. I'm just adding that. Yes, Your Honor. If I may briefly respond. It's not so much that the board made a finding or a determination. It gave its reading of the record. However, it adopted and affirmed the immigration judge's, essentially deferring to the immigration judge's reading. So to the extent there is embroidery, Your Honor, it's not really germane to the case at hand. Okay. Thank you, Your Honor. Thank you. Are there any further questions of the petition?  Thank you. The case just argued is submitted for decision.
judges: Conti, Schroeder, Thomas